AO 91 (Rev. 11/11)  Criminal Complaint | AUSA: Jeanine Brunson | Telephone: (313) 226-9100
--- | --- | ---
 | Special Agent: Paul Staso | Telephone: (313) 965-2323

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.
Deon Carter, et al.

Case No. 
Case: 2:25−mj−30227
Assigned To : Unassigned
Assign. Date : 4/11/2025
Description: RE: DEON CARTER, JAYLEN WHITE (EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 10, 2025__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c)(1)(A) | Brandished a firearm during and in relation to a crime of violence |
| 18 U.S.C. § 2 | Aiding & Abetting |

This criminal complaint is based on these facts:
See atatched affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Paul Staso, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: April 11, 2025

*Judge's signature*

City and state: Detroit, MI

Hon. David R. Grand, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Paul J. Staso, being duly sworn, depose and state as follows:

## I. INTRODUCTION

1. I have been employed as a Special Agent of the Federal Bureau of Investigation for five years. I am currently assigned to the Violent Crime Squad in the Detroit Division of the FBI.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2501(7), that is, an officer of the United States who is empowered by the law to conduct investigations of and to make arrests for the offenses enumerated in 18 U.S.C. § 2516.

3. I have investigated federal violations concerning crimes of violence and firearms. I have gained experience through training and everyday work related to these types of investigations.

4. The statements contained in this Affidavit are based on my experience and background as a special agent and on information provided by police officers, other agents of the FBI, and other law enforcement personnel. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all of facts known to law enforcement related to this investigation.

5. This affidavit is also made in support of a criminal complaint charging with taking a motor vehicle transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation and with intent to cause death or serious bodily harm in violation of 18 U.S.C. § 2119, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

## II.   PROBABLE CAUSE

### Carjacking of VECHICLE 1

6. On April 10, 2025, at approximately 7:30 a.m., R.T. was parked in his red 2005 Chevrolet Suburban (VEHICLE 1) waiting for his workplace to open in Detroit, Michigan.

7. Two males approached R.T. on foot and both men pointed handguns at R.T. One of the armed gunmen told R.T. "get out of the car I'm doing this for my mom."

8. R.T. complied out of fear for his life. Once out of VEHICLE 1, one of gunmen demanded everything from R.T's pockets. R.T. gave the armed subjects his phone, green card, ID, and seventeen dollars.

9. R.T. described the first subject who made the demands as a black male approximately 5' 6" wearing all black. He described the second subject as a

black male approximately 5' 10" tall. Both gunmen were wearing ski masks during the carjacking.

10.     The second subject got into the driver's seat of VEHICLE 1 and the first subject got into the passenger's seat of VEHICLE 1. Both gunmen drove away in R.T.'s Chevrolet Suburban.

11.     At approximately 8:30 a.m. on the same day, L.M. came into the 10th Precinct at the Detroit Police Department to report that someone in a red SUV, matching the description of carjacked VEHICLE 1, fired two shots while following L.M. L.M. reported that he left his residence, which was approximately 3 miles from the location where VEHICLE 1 was carjacked at gunpoint, when he noticed a red SUV sitting about two blocks away. When L.M. drove off in his vehicle, the red SUV followed him. At one point the SUV pulled up next to L.M. prompting L.M. to back up to allow the SUV to pass, but the SUV backed up too. L.M. then turned onto Intervale Street and the red SUV followed directly behind him. L.M. sped up and the SUV continued to follow him. L.M. then heard what he believed to be two gunshots. L.M. drove directly to the 10th Precinct. L.M. arrived with a flat tire but he was unsure if the flat tire was the result of a gunshot or something else.

12.     Law enforcement conducted a canvass in the area of 7xxx Intervale Street and located a single cartridge shell casing. This casing will be submitted for

comparison testing to a firearm recovered during the arrest of Deon CARTER which will be described in further detail below.

### Carjacking of VEHICLE 2

13. During the morning hours of April 10, 2025, J.J. was parked in his Dodge Journey (VEHICLE 2) after dropping his children off at school in Detroit. As J.J. was sitting in VEHICLE 2, J.J. observed a burgundy SUV drive past him. The SUV turned around and parked next to J.J. The passenger exited the SUV with a black pistol. The gunman opened the driver's door to J.J.'s VEHICLE 2 and stated "don't do nothing stupid and get back in the car." The armed gunmen got into the driver's seat of VEHICLE 2 and drove away with J.J. inside.

14. J.J. described this armed subject as a black male, 19-21 years of age, approximately 5' 5" tall wearing a black coat, black ski mask, and black shoes. This description matches the description of one of the subjects who carjacked VEHICLE 1 earlier the same morning.

15. Carjacked VEHICLE 2 was driven to the BP gas station at Dexter Avenue and Davison Street. J.J. was forced into the convenience store by the gunman who demanded that J.J. turn over some money. J.J. was unable to get money from an ATM and suggested they go to the Chase Bank. While in the convenience store, J.J. stated that the gunman who drove away with him in carjacked VEHICLE 2 started talking to another male, who was later identified as

the driver of carjacked VEHICLE 1. The gunman walked J.J. out of the BP and made J.J. get into the back of carjacked VEHICLE 2. The same armed subject entered carjacked VEHICLE 2 on the passenger's side and climbed over to the driver's seat. The armed subject then had J.J. climb into the front passenger seat. The gunman drove away with J.J. inside carjacked VEHICLE 2.

16. The BP gas station is equipped with Green Light video. Law enforcement later reviewed the footage and observed carjacked VEHICLE 1 as it pulled up to the gas pump on the opposite side of carjacked VEHICLE 2. The driver of carjacked VEHICLE 1 re-entered the driver's seat and drove away. Both carjacked VEHICLES 1 and 2 left the BP at the same time. A still image from the BP showing carjacked VEHICLES 1 and 2, along with both assailants surrounding J.J., is shown below.



## Chase Bank and arrest of Deon CARTER

17. After the failed attempt to get money from the ATM at the BP gas station, J.J., was driven by the armed subject in carjacked VEHICLE 2 to the Chase Bank located at 12840 Dexter Avenue, Detroit. The gunman told J.J., "I know this is a bank, I don't want to shoot you so don't make a scene." J.J went to the teller window but J.J. was unable to get money because he did not have an account. J.J. obtained a deposit slip and wrote on the slip "he has a gun." J.J. then gave the deposit slip to the bank teller. A security guard approached J.J. and J.J. whispered "he has a gun" in an attempt to get the security guard's attention. The security guard then approached the armed subject and a struggle ensued. The subject, later identified as Deon CARTER, pulled a pistol from his pocket. The security guard was able to wrestle the gun from CARTER and he (the security guard) directed bank employees to call 911. Other items fell from CARTER's pockets during the struggle with the bank security guard. Those items included a Visa credit card, and an ID card bearing R.T.'s name -- the victim of the carjacking of VEHICLE 1.



18. Deon CARTER eventually ran away from the security guard, kicked the front door open, and fled the bank. Responding officers observed CARTER run from inside the bank directly towards carjacked VEHICLE 2. Officers were able to take CARTER into custody as he ran to carjacked VEHICLE 2. Deon CARTER's date of birth is 07/20/20xx. CARTER was recorded on his Michigan driver's license as 5'7" and 145 pounds which is consistent with the description given by both carjacking victims.

19. CARTER was searched incident to arrest and a loaded magazine was located in his front pocket. Law enforcement later determined that the loaded magazine fit the 9mm handgun which fell from CARTER's pocket during his struggle with the bank's security guard.

20. The bank security guard who disarmed CARTER turned over to the law enforcement a Glock 9mm handgun with one round in the chamber and no

magazine. This is the firearm that fell from CARTER's pocket during his struggle with the Chase Bank security guard. The serial number on the firearm appeared defaced. After an in-depth review of the pistol, law enforcement discovered a second serial number which, per LEIN, is associated to a firearm stolen in March 2025.

### Arrest of Jaylen White

21. On April 10, 2025, at approximately 9:00 a.m., law enforcement observed carjacked VEHICLE 1 in the area of 1500 Dexter Avenue, which is approximately one (1) mile from the Chase Bank where CARTER was apprehended. Officers attempted a traffic stop of carjacked VEHICLE 1. The driver of carjacked VEHICLE 1 immediately fled from the police. The driver of carjacked VEHICLE 1 lost control and crashed into a truck near Puritan Avenue and Belden Street in Detroit, Michigan.

22. The driver exited the driver's door of carjacked VEHICLE 1 and attempted to flee on foot. The driver was apprehended a short distance from carjacked VEHICLE 1. The driver of carjacked VEHICLE 1 was Jaylen Deshawn WHITE, date of birth, 4/12/20xx. WHITE is listed as 5'11", 145 pounds on his Michigan driver's license, which matches the physical description given by R.T. and J.J.

### III. CONCLUSION

23. On April 10, 2025 Jaylen WHITE and Deon CARTER aided and abetted one another in the taking of a motor vehicle from R.T. and J.J. at gunpoint and through the use of force, violence, and intimidation.

24. VEHICLE 1 that was taken at gunpoint, and through the use of force, violence, and intimidation was manufactured in Mexico outside the state of Michigan. Therefore, the vehicle was "transported in interstate commerce" as recited in 18 U.S.C. § 2119.

25. VEHICLE 2 that was taken at gunpoint, and through the use of force, violence, and intimidation was also manufactured in Mexico outside the state of Michigan. Therefore, the vehicle was "transported in interstate commerce" as recited in 18 U.S.C. § 2119.

26. Based on the above information, probable cause exists that Deon CARTER, and Jaylen WHITE, took a motor vehicle transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation and with intent to cause death or serious bodily harm in violation of 18 U.S.C. § 2119. Furthermore probable cause exists CARTER and WHITE brandished a firearm in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

27. In consideration of the foregoing, I respectfully request that this Court issue a complaint against Deon CARTER and Jaylen WHITE for their violations of 18 U.S.C. §§ 2119, 924 (c)(1)(A), and 2.

28. Further in consideration of the foregoing, I respectfully request that this court issue an arrest warrant for Deon CARTER and Jaylen WHITE for violation of 18 U.S.C. §§ 2119, 924 (c)(1)(A), and 2.

_____
PAUL J. STASO
Special Agent, FBI

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Hon. David R. Grand
United States Magistrate Judge

Date:   April 11, 2025